1

2    WO

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Steven Sentre Merchant,                    No.  CV-21-01593-PHX-JAT (ESW)

10                          Plaintiff,

11   v.                                          **ORDER**

12   Unknown Smith, et al.,

13                          Defendants.

14

15         Plaintiff Steven Sentre Merchant, who is currently confined in the Arizona State

16   Prison Complex (ASPC)-Douglas, brought this pro se civil rights action pursuant to 42

17   U.S.C. § 1983 regarding events that occurred while he was incarcerated in the Red Rock

18   Correctional Center (RRCC) in Eloy, Arizona.  (Doc. 1.)  Defendant Smith moves for

19   summary judgment.  (Doc. 73.)  Plaintiff was informed of his rights and obligations to

20   respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc)

21   (Doc. 77), and he opposes the Motion.  (Doc. 89.)  Also pending is Plaintiff's "Request for

22   Rule (d)56 [sic] Relief and for Expedited Hearing" (Doc. 89), which the Court has deemed

23   to be both a motion and Plaintiff's Response to Defendant's Motion for Summary

24   Judgment.[1]  (*See* Doc. 92.)

25   . . . .

26   . . . .

27   ───────────────────

28         [1] Plaintiff was provided two extensions of time to file a separate response to
     Defendant's Motion for Summary Judgment, but he did not do so.

MGD

## I. Background

Plaintiff alleges in his Complaint that on September 19, 2019, he saw an officer sleeping while on duty and reported it to Captain Site.  (Doc. 1 at 3.)  Site allegedly informed Correctional Officers (COs) Smith and Calvin, who then entered Plaintiff's pod and told other prisoners that Plaintiff was a "snitch."  (*Id.*)  As a result of being called a snitch, Plaintiff alleges that he was assaulted by other prisoners, "force[d] to use a 'pill,'" and "was force[d] to '805' off the yard."  (*Id.*)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a First Amendment retaliation claim in Count One and an Eighth Amendment threat-to-safety claim in Count Three against Defendants Smith and Calvin and directed them to answer the claims.  (Doc. 7.)  The Court dismissed the remaining claims and Defendants.  (*Id.*)  The Court subsequently dismissed Defendant Calvin without prejudice for failure to timely effect service of process.  (Doc. 49.)

Defendant Smith now moves for summary judgment based on failure to exhaust administrative remedies and on the merits.

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III. Exhaustion of Administrative Remedies

### A. Legal Standard

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there

is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.  The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If the defendants move for summary judgment for failure to exhaust and the evidence shows that the plaintiff did, in fact, exhaust all available administrative remedies, it is appropriate for the court to grant summary judgment sua sponte for the nonmovant on the issue. *See Albino*, 747 F.3d at 1176 (pro se prisoner did not cross-move for summary judgment on issue of exhaustion, but because he would have succeeded had he made such a motion, sua sponte grant of summary judgment was appropriate).

## B.    Relevant Facts[2]

### 1.    RRCC's Grievance Procedure

The Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR) Department Order (DO) 802, Inmate Grievance Procedure, sets forth the grievance procedures prisoners must follow at RRCC.  (Doc. 74 (Def.'s Statement of Facts) ¶ 37.) Upon arrival at RRCC, prisoners are provided a copy of the Arizona Inmate Handbook ("Handbook"), which directs them to follow the grievance procedures set forth in DO 802. (*Id.* ¶¶ 36-37.)  Copies of the Handbook and DO 802 are available to prisoners in the RRCC

---

[2] Although Plaintiff filed a Response, Plaintiff failed to comply with the Court's *Rand* Order and Local Rule of Civil Procedure 56.1(b) for responding to a motion for summary judgment and did not file a separate statement of facts, setting forth for each paragraph in Defendant's Statement of Facts a correspondingly numbered paragraph "indicating whether [he] disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting [his] position." (*See* Doc. 77; LRCiv. 56.1(b).)  The Court will therefore consider Defendant's facts undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified Complaint or other evidence on the record.  Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

library.  (*Id.* ¶ 39.)  Plaintiff received a copy of the Handbook and verbal instruction on the grievance procedures during the general prisoner orientation conducted by RRCC staff, and the grievance process was available to him at all relevant times at RRCC.  (*Id.* ¶¶ 38, 40.)

DO 802.01, Section 1.1 states that "[t]he Inmate Grievance Procedure is designed to address inmate complaints related to any aspect of institutional life or condition of confinement that directly and personally affects the inmate grievant, including . . . the actions of staff."  (*Id.* ¶ 41.)  Certain issues, such as disciplinary hearings, protective custody, and classification are not grievable under DO 802.  (*Id.* ¶¶ 42-43.)  Plaintiff's claims alleging Defendants retaliated against him and were deliberately indifferent to his safety are grievable pursuant to DO 802.  (*Id.* ¶ 45.)

Under DO 802, prisoners must first attempt to resolve their issues informally, either by discussing the issue with staff or by submitting an Inmate Informal Complaint Resolution.  (*Id.* ¶ 46.)  The informal complaint must be submitted within 10 workdays of the date of the action that caused the complaint, and a CO III must provide a response within 15 days of receiving the informal complaint.  (*Id.* ¶¶ 47-48.)

If the prisoner is dissatisfied with the response to his informal complaint, he may file a formal grievance within 5 days of that response.  (*Id.* ¶ 49.)  The formal grievance is assigned a grievance number and logged in the facility Grievance Log, and a copy of it is maintained in the grievance file.  (*Id.* ¶¶ 50-51.)  Within 15 days of receipt of the formal grievance, the Deputy Warden must issue a response.  (*Id.* ¶ 52.)  If the prisoner is dissatisfied with the Deputy Warden's response, he may appeal the decision by submitting a Grievance Appeal to the Director within 5 workdays of receiving the response.  (*Id.* ¶ 53.)  The Director's response is final and ends the administrative remedy process.  (*Id.* ¶ 54.)

If a prisoner does not receive a response within the time specified, the time to proceed to the next step of the process is the same as if a response was received pursuant to DO 802 § 1.10.1.  (*Id.* ¶ 69.)  Prisoners are required to completely exhaust the grievance process to the end prior to filing a lawsuit pursuant to DO 802 § 1.5.  (*Id.* ¶ 70.)

1

## 2. Plaintiff's Grievance History

2      RRCC Grievance Coordinator T. Hansen has access to all RRCC grievance records.

3  (Doc. 74-1, Ex. 3, Hansen Decl. ¶ 34.)  According to Hansen, Plaintiff began the grievance

4  process and submitted an Informal Complaint Resolution on October 1, 2019, in which he

5  complained that COs Smith and Calvin told the pod that Plaintiff was a snitch.  (*Id.* ¶ 35;

6  Doc. 74-1 at 71.)  On October 3, 2019, Plaintiff submitted an Inmate Grievance, which was

7  received by CO Montoya on October 4, 2019.  (Hansen Decl. ¶ 36.)

8      On November 7, 2019, Plaintiff was transferred from RRCC to ASPC-Lewis.  (*Id.*

9  ¶ 37.)

10      On November 8, 2019, Plaintiff received a response to his October 3, 2019 Inmate

11  Grievance stating that an investigation into his claim was conducted and there was no

12  evidence at that time of any staff misconduct against Plaintiff, and his grievance was now

13  resolved.  (*Id.* ¶ 38; Doc. 74-1 at 79.)  The response notified Plaintiff that if he was "not

14  satisfied with the response [he] may follow the grievance procedure as outlined in policy

15  802."  (*Id.*)

16      On December 18, 2019, past the timeframe to submit an appeal, Plaintiff wrote an

17  Inmate Grievance Appeal addressed to "Deputy Warden/Administrator," but the appeal

18  was not properly submitted or received by ADCRR staff.  (Hansen Decl. ¶ 39; Doc. 74-1

19  at 81; Doc. 89 at 29.)[3]  After not receiving a response to his December 18, 2019 grievance

20  appeal, Plaintiff wrote another Inmate Grievance Appeal on April 26, 2020 addressed to

21  the Director that was not properly submitted or received by ADCRR staff.  (Hansen Decl.

22  ¶ 40; Doc. 74-1 at 83; Doc. 89 at 28.)[4]

23      J. Berraras serves as the Administrative Services Officer VI/Inmate Appeals

24

25      [3] Both Plaintiff and Defendant submitted copies of this Grievance Appeal.  The
26  space on the form where the date received and recipient are to be noted are smudged on
    both copies, and the Court cannot tell if anything is written in those spaces.  (*See* Doc. 89
27  at 29; Doc. 74-1 at 81.)

28      [4] Both Plaintiff and Defendant submitted copies of this Grievance Appeal, and it is
    clear there is nothing written in the space on the form for the date received and recipient.
    (*See* Doc. 89 at 28; Doc. 74-1 at 83.)

Administrator for all Arizona State Prison Complexes.  (Doc. 74 ¶ 72.)  Berraras reviewed ADCRR records for Plaintiff, which show he was housed at ASPC-Lewis Stiner Unit from November 7, 2019 to October 18, 2022.  (*Id.* ¶ 73.)  Berraras reviewed the Unit Grievance Coordinator Log for any processed or unprocessed formal grievances and grievance appeals filed at ASPC-Lewis Complex by Plaintiff from November 2019 through September 15, 2021, when he filed his Complaint in this action, but there were no processed or unprocessed grievances during this period.  (*Id.* ¶¶ 74-75.)  Berreras is also aware that Plaintiff wrote two Grievance Appeals that were not properly submitted or received by staff, and there is no record of Plaintiff ever submitting any appeals to the Director's level.  (*Id.* ¶¶ 76-77.)  When Plaintiff realized he had not received any responses to his grievance appeals, he could have brought them to any ADCRR staff member for review and processing, but there is no record he did this.  (*Id.* ¶ 78.)

### C.    Discussion

Defendant's evidence shows that Plaintiff completed the first two steps in the ADCRR grievance process by filing an Informal Complaint Resolution and an Inmate Grievance, but he did not file a timely grievance appeal.  Plaintiff filed his grievance on October 3, 2019, and he received a response on November 8, 2019.  Plaintiff had five workdays to file a Grievance Appeal with the ADC Director, or until November 18, 2019, but there is no evidence Plaintiff filed a Grievance Appeal by then.  Even if Plaintiff had properly submitted his December 18, 2019 Grievance Appeal, it would have been untimely.  Consequently, Plaintiff did not complete the final step of the grievance process.

Defendant has met her initial burden of showing that Plaintiff failed to exhaust administrative remedies, and the burden now shifts to Plaintiff to show that he either did exhaust or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.

Plaintiff's Response primarily focuses on the issue of missing video footage that he says would support his claims of retaliation and threat to safety, and he did not address the

issue of exhaustion in his Response except to say, "Now I wish I would [have] kept up with the grievance and continue[d] the process to the director of D.O.C. (D. Shinn), maybe they would [have] save[d] all the video footage . . . ." (Doc. 89 at 4.)  This is insufficient to rebut Defendant's evidence that he did not exhaust his administrative remedies.  Also, in his Complaint, Plaintiff checked the boxes on the form indicating that he submitted a request for administrative relief to the highest level as to each claim.  But simply checking the boxes on the complaint form that he appealed his administrative remedies to the highest level, without any explanation of what he did to exhaust his administrative remedies, is not sufficient.  Defendant's evidence shows that Plaintiff did not complete the grievance procedure for either claim, and by not presenting any evidence showing that he either exhausted the available administrative remedies or that something in his particular case prevented him from doing so, Plaintiff has failed to rebut Defendant's evidence.

Accordingly, the Court will grant summary judgment to Defendant based on failure to exhaust administrative remedies.

**IV.   Plaintiff's "Request for Rule (d)56 [sic] Relief and for Expedited Hearing"**

In this Motion, Plaintiff requests relief because he "doesn't have all the facts due to lack of discovery." (Doc. 89 at 1.)  Plaintiff states that Defendant is lying under oath, and he can prove it at trial.  Plaintiff asserts that video footage from the prison would verify Plaintiff's version of events, but the video footage has been deleted.

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may issue any appropriate order, including deferring consideration of the motion for summary judgment or denying it, or allowing "time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d).  The party requesting relief under Rule 56(d) must set forth in its affidavit or declaration: (1) "specific facts it hopes to elicit from further discovery," (2) that "the facts sought exist," and (3) that "the sought-after facts are essential to oppose summary judgment." *Family Home & Finance Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (discussing former Rule 56(f)).)  "Failure

to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Id.* (internal quotation marks omitted).

Plaintiff makes no showing that the video footage he seeks is essential to oppose summary judgment on the issue of exhaustion or has anything to do with exhaustion of administrative remedies. Accordingly, because Plaintiff has not shown that additional discovery is essential to oppose summary judgment on the issue of exhaustion, the Court will deny his Motion seeking relief pursuant to Rule 56(d).

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. 73) and Plaintiff's "Request for Rule (d)56 [sic] Relief and for Expedited Hearing" (Doc. 89).

(2)     Defendant's Motion for Summary Judgment (Doc. 73) is **granted**.

(3)     Plaintiff's "Request for Rule (d)56 [sic] Relief and for Expedited Hearing" (Doc. 89) is **denied**.

(4)     This action is **terminated without prejudice** for failure to exhaust administrative remedies. The Clerk of Court must enter judgment accordingly.

Dated this 3rd day of August, 2023.

James A. Teilborg
Senior United States District Judge